UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SEALFIT, INC.,<br><br>Defendant. | Case No.: 3:19-cv-1388-GPC-AGS<br><br>**ORDER GRANTING DEFENDANT SEALFIT'S MOTION TO STAY**<br><br>**[ECF No. 15]** |

Before the Court is Defendant SEALFIT, Inc.'s ("Defendant" or "Sealfit") motion to stay proceedings. ECF No. 15. Plaintiff Philadelphia Insurance Company ("Plaintiff" or "Philadelphia") filed an opposition on November 15, 2019. ECF No. 20. Sealfit filed a reply on November 27, 2019. ECF No. 21.

**FACTUAL BACKGROUND**

Philadelphia issued an insurance policy to Sealfit effective July 1, 2016 to July 1, 2017 (the "Policy"). ECF No. 1 ("Compl.") ¶ 11. On September 25, 2018, a complaint was filed in San Diego Superior Court ("Wrongful Death Action") against Sealfit alleging that Kirk Deligiannis died on September 25, 2016 as a result of Sealfit's negligence. Deligiannis participated in a multi-day, 50-hour strenuous fitness event, which was organized and promoted by Sealfit. The plaintiffs in the Wrongful Death

1

Action allege the following:

> Towards the end of the event, Defendants recognized that the decedent was suffering and had become pale. They then removed him from the training. For some inexplicable reason, Defendants were grossly negligent in allowing decedent to return to the strenuous training after recognizing he was in a perilous medical condition. Additionally, Defendants had promised to monitor his nutrition and intake and grossly failed to do so resulting in a major decline in his blood sugar levels. Shortly thereafter, decedent collapsed, and without an AED or emergency medical care for at least 16 minutes, died."

ECF No. 20 at 18.[1] Philadelphia agreed to defend Sealfit against the Wrongful Death Action under reservation of rights on June 13, 2019. Compl. ¶ 10. On July 25, 2019, Philadelphia filed a complaint in this Court seeking entry of a judicial declaration that Philadelphia has no duty to either defend or indemnify Sealfit in the Wrongful Death Action since there was no actual coverage under the Policy for all or part of the Wrongful Death Action.[2]

### A. The Policy

The Policy provides Sealfit commercial general liability coverage, under which Philadelphia agrees to pay damages because of "bodily injury" caused by an "occurrence" which occurs during the policy period. ECF No. 20 at 5. The Policy also contains a Participant Legal Liability – Accident Medical Warranty Endorsement

---

[1] Plaintiff requests that this Court take judicial notice of the complaint filed in the Wrongful Death Action (filed as ECF No. 20, Exhibit A to the Declaration of Lisa Darling-Alderton) pursuant to Federal Rules of Evidence Rule 201. A district court may consider "material which is properly submitted as part of the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the documents are not attached to the complaint, an exception exists if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (citations omitted). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The complaint in the underlying Wrongful Death Action was attached to the Complaint filed in this action and is referred to extensively by both parties. The Court therefore **GRANTS** Plaintiff's request for judicial notice.

[2] Plaintiff filed the Complaint against both Sealfit and CrossFit, Inc. ("Crossfit"). Plaintiff and Sealfit jointly stipulated to dismiss Crossfit from the action without prejudice on October 31, 2019. ECF No. 19.

2

("Endorsement"), which states:

> Catastrophic Medical Insurance
> Limits no less than: $25,000
> Specified Athletic Activity: All
>
> A. In order for there to be coverage for "bodily injury" to "player participants," hereafter referred to as "Participant Legal Liability" coverage under this policy, Catastrophic Medical Insurance for the specified athletic activity and at no less than the limit shown in the Schedule above must be in full force and effect at the time of the "occurrence" giving rise to a claim under this policy. Failure to maintain coverage on all "player participants" in the Specified Athletic Activity shown in the Schedule above will fully void "participant legal liability" coverage with respect to any "player participants."
>
> B. For purposes of this endorsement, it is understood and agreed that "player participant" means any individual while practicing for or participating in a sport or athletic activity specified above.

Compl. ¶ 11. Sealfit did not obtain Catastrophic Medical Insurance. *Id.* ¶ 12.

## DISCUSSION

Sealfit argues that a stay is warranted since Plaintiff's requested relief is based on facts that relate to and directly overlap with facts at issue in the Wrongful Death Action – namely, whether Deligiannis died during or after the Kokoro fitness event, which would in turn determine whether Deligiannis qualifies as a "player participant" under the Policy. Philadelphia counters that the Endorsement from the Policy applies and therefore, Sealfit's failure to obtain Catastrophic Medical Insurance eliminated any duty on the part of Philadelphia to defend or indemnify Sealfit in the Wrongful Death Action. The Court agrees with Sealfit.

**B. Legal Standard**

A court has the inherent power to stay proceedings. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The Ninth Circuit has noted the following three considerations that a district court should take into account before entering a stay: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship

or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

With regard to insurance disputes, in order "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, it is appropriate to stay a declaratory relief action seeking to determine an insurer's duty to defend, pending resolution of the underlying third party suit, where the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 290–91 (1993) ("*Montrose I*"); *see also Northland Ins. Co. v. Briones,* 81 Cal. App. 4th 796, 803–04 (2000) ("[A] stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action."). "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." *Montrose I*, 6 Cal 4th 287, 290-91. In other words, a stay is not required if the court can resolve the coverage question as "a matter of law without making any factual determinations that would prejudice the insured in the third party action." *GGIS Ins. Servs., Inc. v. Superior Court,* 168 Cal. App. 4th 1493, 1505 (2008).

### C. A Stay is Warranted

Here, the Court cannot determine purely as a matter of law whether Philadelphia's Policy bars the Philadelphia's duty to defend or indemnify since factual development will be required to determine whether the Endorsement applies. Philadelphia argues that the complaint in the Wrongful Death Action shows "on its face that the injury complained of . . . is excluded from the policy," and therefore Philadelphia has no obligation to defend. In support, Philadelphia cites the *GGIS* court's explanation that an insurer's duty to defend can be negated if insurer "extinguishes[s] . . . all facts suggesting potential coverage." ECF No. 20 at 7 (citing *GGIS*, 168 Cal. App. 4th 1493, 1506). However, the

question of whether Deligianiss died during the event is an unresolved factual question and the resolution of this question will affect the question of insurance coverage, since, if he died after the conclusion of the Kokoro event, there is a possibility that Philadelphia would be required to provide coverage.

Further, the California Supreme Court has explained that at least with respect to the duty to defend, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even if the face of the complaint does not reflect a potential for liability under the policy." *Montrose I*, 6 Cal. 4th 287 at 296. "[T]he third party plaintiff cannot be the arbiter of coverage." *Id.* Therefore, a "[d]efendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966). Since "[t]he pleadings are malleable, changeable and amendable . . . courts do not examine only the pleaded word but the potential liability created by the suit." *Id.*

The insurance dispute in the instant case is not of the kind where potential coverage is so "tenuous and farfetched" as to negate any possibility that the insurer has a duty to defend or indemnify. *Lassen Canyon Nursery v. Royal Ins. Co. of America*, 720 F.2d 1016 (9th Cir. 1983) (insurance policy covering claims for property damage clearly did not cover antitrust claims). If Sealfit proves in the Wrongful Death Action that Deligiannis did not die "while practicing for or participating in" Kokoro, Sealfit can establish that Philadelphia's "Endorsement" does not apply thereby confirming Philadelphia's duty to defend or indemnify. Since the Court cannot make such a factual finding at this juncture, a stay is warranted. The Court therefore **GRANTS** Plaintiff's motion to stay.

### D. A Declaratory Judgment Would Not Be Beneficial or Appropriate

Philadelphia argues that the declaratory judgment would be beneficial and appropriate in order to provide an early adjudication of the rights of all parties, prompting the plaintiffs in the Wrongful Death Action to pursue the defendants with the "deepest pockets, and accept more reasonable settlements." ECF No. 20 at 10. Sealfit counters

that a declaratory judgment at this juncture would prejudice Sealfit in the Wrongful Death Action since it may collaterally estop Sealfit from relitigating factual findings with regard to the timing and circumstances of Deligianiss's death and further, a declaratory judgment would require Sealfit to litigate on two, if not more, fronts.

While the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates v. Rickover,* 369 U.S. 111, 112 (1962). The factors listed in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942) remain the "philosophic touchstone for the district court" in considering declaratory judgment actions. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). Generally, *Brillhart* counsels district courts to stay actions in order to avoid: (1) needless decisions of state law; (2) forum shopping; and (3) duplicative litigation. *See id.*; *St. Paul Fire & Marine Ins. Co. v. Nonprofits Untied*, 91 F. App'x 537, 538 (9th Cir. 2004).

In general, California courts have expressed the following concerns regarding litigating insurance coverage simultaneously as the underlying dispute is being litigated:

> *First,* the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; *second,* such a circumstance requires the insured to fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions this effectively undercuts one of the primary reasons for purchasing liability insurance; and *third,* there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former.

*David Kleis, Inc. v. Superior Ct.,* 37 Cal.App.4th 1035, 1044–45, 44 Cal.Rptr.2d 181 (1995). "If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage." *Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.)* ("*Montrose II*"), 25 Cal. App. 4th 902, 910 (1994), *as*

6

*modified* (June 30, 1994).

Here, denying Sealfit's motion to stay would place it in the exact situation warned of in *David Kleis* and *Montrose II*. Sealfit argues that in the event that this instant action is not stayed, Sealfit would be required to litigate prospective bad-faith, concealmeant, California Business & Professions Code Section 17200 claims, and fraudulent inducement claims against Philadelphia, while simultaneously litigating the Wrongful Death Action in state court. The Court agrees. Declaratory relief for Philadelphia would impose prejudice on Sealfit by requiring require Sealfit to fight a "two-front war." *Montrose II*, 25 Cal. App. 4th 902, 910.

## CONCLUSION

In sum, the Court concludes that a stay of this case is warranted. The Court **GRANTS** Defendant Sealfit's motion to stay.

**IT IS SO ORDERED.**

Dated: January 14, 2020

Hon. Gonzalo P. Curiel
United States District Judge